United States District Court
Southern District of Texas
FILED

APR 2 6 2016

Clerk of Court

United States District Court
Southern District of Texas
**ENTERED**
May 02, 2016
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

JOSE ANTONIO PIZANO §
    Petitioner §
    §
    §
vs. §        CIVIL ACTION NO. M-14-939
    §
    §
WILLIAM STEPHENS §
DIRECTOR, TEXAS DEPARTMENT §
OF CRIMINAL JUSTICE, CORRECTIONAL §
INSTITUTIONS DIVISION §
    Respondent §

## REPORT & RECOMMENDATION

Petitioner, a state prisoner proceeding pro se, filed an application for relief pursuant to 28 U.S.C. § 2254, with memorandum of law in support. (Dkt. Entry Nos. 1–2.) This case was referred to the undersigned pursuant to 28 U.S.C. § 636(b). Pending before the Court is Respondent's Motion for Summary Judgment. (Dkt. Entry No. 16.) Petitioner did not file a response to the dispositive motion. (*See* Dkt. Sheet.) This case is ripe for disposition on the record.

After careful review of the record and the applicable law, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment (Dkt. Entry No. 16) be **GRANTED** for the reasons explained in this Report, Petitioner's claims under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED** with prejudice because they lack merit or are procedurally barred from review, and the case be closed.

## I.  BACKGROUND

Petitioner is currently in the custody of the Texas Department of Criminal Justice ("TDCJ") pursuant to a judgment and sentence from the 92nd Judicial District Court of Hidalgo County, Texas, in criminal cause number CR-2516-09-A.   (Dkt. Entry No. 1 at 1.)[1]   Petitioner was convicted by a jury of capital murder committed in the course of committing or attempting to commit aggravated robbery pursuant to Tex. Penal Code Ann. § 19.03(a)(2), (b), and was assessed a punishment of life in prison without the possibility of parole. *Pizano v. State*, 2012 WL 1964553, at *1 (Tex. App.—Corpus Christi 2012, pet ref'd) (not designated for publication).

Petitioner filed a direct appeal, and Texas's Thirteenth Court of Appeals affirmed the judgment.   *Id.*   Petitioner's petition for discretionary review was refused by the Texas Court of Criminal Appeals ("TCCA").   (*See id.*)

Subsequently, Petitioner filed two state habeas applications under Article 11.07 of the Texas Code of Criminal Procedure.   Only the first application is relevant here, which the TCCA denied without written in March 2014.   (*E.g.,* Dkt. Entry No. No. 15-31 at 1; No. 16 at 3–4.) This action timely followed in September 2014, and Respondent does not dispute its timeliness. (Dkt. Entry No. 16 at 9.)

## II.  SUMMARY OF THE PLEADINGS

Consistent with Respondent's construction of the claims, the undersigned finds that Petitioner asserts the following claims in his pleadings:

(1)      The trial court erred by allowing involuntary, custodial statements to be used at trial and by admitting evidence obtained through a warrant not supported by probable cause;

---

[1]   Page numbers refer to the electronically-assigned (PDF) page numbers via CM-ECF when the entire, relevant file is opened.

2

(2)  The evidence is legally and factually insufficient to sustain his conviction; and,

(3)  Trial counsel rendered ineffective assistance by:

    (a)  failing to contest the validity of the search warrant to seize Petitioner's blood;

    (b)  failing to investigate and produce witnesses crucial to his defense;

    (c)  failing to properly impeach the prosecution's witnesses; and,

    (d)  committing an accumulation of errors that collectively rendered his legal representation ineffective.

(Dkt. Entry No. 1 at 6–7; No. 2 at 1–26.)

Respondent argues that the claims either lack merit under the Antiterrorism Effective Death Penalty Act ("AEDPA") or are procedurally defaulted.   (*See* Dkt. Entry No. 16 at 14–36.)

## III.   AEDPA'S STANDARDS OF REVIEW

Under AEDPA, a "[c]ourt may not issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the claim by the state court '(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Riddle v. Cockrell*, 288 F.3d 713, 716 (5th Cir. 2002) (citing 28 U.S.C. § 2254(d)(1)–(2)).   As stated by the Supreme Court of the United States, "[section] 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000)). "Contrary to" means that the state court applied a rule different from the governing law set forth in Supreme Court cases, or if the state court decided a case differently than the Supreme Court has

done on a set of materially indistinguishable facts. *Id.* "Unreasonable application" means that the state court correctly identified the correct governing legal principle from Supreme Court decisions, but the state court unreasonably applied the legal principle to the facts of the particular case. *Id.* An "unreasonable application" does not arise simply because the federal habeas court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. "The focus of this objective reasonableness inquiry is on the state court's ultimate decision, not whether the state court 'discussed every angle of the evidence.'" *Dale v. Quarterman*, 553 F.3d 876, 879 (5th Cir. 2008) (citing *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

A state court's findings of fact are presumed to be correct unless the petitioner rebuts the presumption by clear and convincing evidence. *Henderson v. Cockrell*, 333 F.3d 592, 598 (5th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). "The clear-and-convincing evidence standard of § 2254(e)(1)—which is 'arguably more deferential' to the state court than is the unreasonable-determination standard of § 2254(d)(2)—pertains only to a state court's determinations of particular factual issues, while § 2254(d)(2) pertains to the state court's decision as a whole." *Blue v. Thaler*, 665 F.3d 647, 654 (5th Cir. 2011).

"Section 2254(d) applies even where there has been a summary denial." *Cullen v. Pinholster* 131 S. Ct. 1388, 1402 (2011) (citing *Richter*, 131 S. Ct. at 786). "Under Texas law, usually a denial of [state habeas] relief rather than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a claim." *Henderson*, 333 F.3d at 598 (citing *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999)). "AEDPA's standards apply . . . when the state's highest court rejects a claim without giving any indication of how or why it reached that decision." *Id.* (citing *Weeks v. Angelone*, 176 F.3d 249, 258 (4th Cir. 1999)). If the Texas Court of Criminal Appeals denies state habeas relief without a written opinion, the federal habeas court: "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003) (citing, among other cases, *Catalan v. Cockrell*, 315 F.3d 491, 493 n.3 (5th Cir. 2002)).

## IV.  RELEVANT LAW & CONCLUSIONS

To provide a factual background of the criminal activity, and for the sake of judicial economy, the undersigned provides an excerpt from the decision by the Thirteenth Court of Appeals, which details the basic facts:

> On April 9, 2009, around 9:30 p.m., Alberto Marin ("Marin"), his wife, Nora Elia Zuniga, and other family members returned home from a church service. Upon entering their home, they were confronted by an armed masked man demanding money. Shortly thereafter, a second masked man entered the house through a kitchen window. Both men wore gloves and carried guns; they asked for money and demanded to know the location of the safe. The men took Marin into a bedroom and forced the other family members to stay in the living room. A few moments later, the family heard shots from the bedroom. The two intruders ran out of the house. Marin staggered out of the bedroom and fell to the floor. A police officer, responding to an emergency call regarding the home invasion, approached the neighborhood in his vehicle. He observed a man in black clothing running across the road. The officer lost sight of the man, but shortly thereafter

encountered another man, later identified as Alberto Pizano ("Alberto"),
appellant's brother. Alberto, who had blood stains on his shoes and clothing, was
arrested. Pursuant to information obtained over the next several weeks, appellant
was arrested.

*Pizano*, 2012 WL 1964553, at *1.

## Claim 1

In his first claim, Petitioner argues that the trial court erred by allowing involuntary,
custodial statements to be used at trial and by admitting evidence obtained through a warrant not
supported by probable cause. Respondent argues that the reasoning by the intermediate
appellate court and the record reflect why this claim lacks merit under AEDPA and why the
TCCA's denial of collateral relief was appropriate.

The undersigned agrees with Respondent. On the first issue—the matter of the alleged
violation under *Miranda v. Arizona*, 384 U.S. 436 (1966)—the Thirteenth Court of Appeals
discussed the evidence presented at the hearing on the motion to suppress the statements
Petitioner gave to police when he was questioned at the police station about 10 days after the
deadly home invasion: [2]

> On January 26, 2011, the trial court held a pre-trial hearing on appellant's motion
> to suppress. The only witnesses were Officers Tamez and Garcia. Both
> officers testified that they picked appellant up at his residence on April 18, 2009;
> appellant agreed to go to the police station for questioning. Officer Tamez
> described appellant as a "person of interest," not a suspect. The officers were in
> an unmarked "undercover" vehicle; appellant was not handcuffed and rode in the
> front seat. Appellant was offered water or soda during the interview. Appellant
> was not forced to make any statements, and did not ask to terminate the interview.

---

[2] It should be noted that, by the time of this interview with Petitioner, investigators had
found one glove in the backyard at the crime scene and found a second glove in a nearby irrigation
ditch and had obtained security video from a Palmhurst Wal-Mart showing Petitioner and his
brother buying, not long before the crime, a pair of gloves similar to the pair found at and near the
crime scene. *See Pizano*, 2012 WL 1964553, at *2.

On cross-examination, Officer Tamez stated that when he and Officer Garcia left the station to obtain a search warrant, he instructed Officer Carrizales to stay with appellant.

Officer Garcia gave similar testimony regarding the April 18 interview with appellant.   During the interview, Officer Garcia asked appellant if he wanted to provide a written statement, but appellant declined because he cannot read or write. After telling appellant that the officers had seen the Wal–Mart video of him and Alberto buying gloves, Officer Garcia asked appellant why he was buying gloves; appellant did not answer.   Appellant was not a suspect at the time of the interview. Appellant became angry with Officer Tamez and said he would rather talk to Officer Garcia.   Appellant did not ask to be taken home.   The interview lasted about an hour and a half.   On cross-examination, Officer Garcia said that on April 18, he considered appellant a "person of interest" but not a suspect. Officer Garcia asked appellant for a DNA sample, but he refused.   When Officer Garcia told him that he would obtain a search warrant authorizing a blood sample, appellant said, "okay." Officer Garcia said that on April 18, he had no probable cause to arrest appellant.

*Pizano*, 2012 WL 1964553, at *9–10.

After a very extensive statement of the law under *Miranda v. Arizona*, state law, and relevant case law, *see Pizano*, 2012 WL 1964553, at *8– 9, the Thirteenth Court of Appeals turned to an analysis of the evidence from the hearing and concluded as follows:

[W]e conclude that the trial court did not abuse its discretion in concluding that appellant's statements were not made as a result of custodial interrogation and were therefore admissible.    The trial court heard testimony that appellant accompanied the officers to the station voluntarily.   He was not handcuffed and was free to leave.    The testimony demonstrates that appellant understood that he could decline to provide a written statement and a DNA sample and could refuse to continue talking with Officer Tamez.   Officer Garcia stated that on April 18, he did not have probable cause to arrest appellant.   Even if Officer Garcia believed he had probable cause to arrest appellant on April 18, the record does not reflect that this was ever manifested to appellant. After the interview was concluded, the officers left to obtain a search warrant. Officer Tamez asked Officer Carrizales to stay with appellant, but there was no evidence that appellant was told that he could not leave.   As the State notes, Officer Carrizales was asked to keep an eye on appellant after the interview was conducted; thus, even if we assume, without deciding, that appellant was in custody during the time that he was in Officer Carrizales's care, there is no evidence that he was questioned during or after that time.   Moreover, we note that appellant did not provide a harm analysis, other than to assert, without elaboration or citation to authority,

that "[a]ppellant's denial of any connection to the gloves was harmful and was a factor in the jury's determination of guilt." Thus, we conclude that appellant's claim that he was harmed by the trial court's denial of his motion to suppress was inadequately briefed. We overrule appellant's first issue.

*Id.*, at *10–11 (internal citations omitted).

Petitioner fails to show that the TCCA's denial of relief for this claim was unreasonable or contrary under AEDPA. Under AEDPA, the factual findings by the state courts are presumed to be correct in this case. In addition, the decision by the Thirteenth Court of Appeals, which is the reasoning Respondent adopts and relies on in its motion for summary judgment, provides an ideal vehicle for understanding why Petitioner is not entitled to federal habeas relief under AEDPA: the presumed and actual application of *Miranda* to the facts of Petitioner's particular case was not unreasonable. *See Richter*, 131 S. Ct. at 786 (explaining that the federal habeas court "must determine what arguments or theories *supported* or . . . *could have supported* the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court") (emphasis added); *Williams*, 529 U.S. at 406 (explaining that an unreasonable application of Supreme Court precedent occurs when the state court correctly identifies the governing precedent *but unreasonably applies it to the facts of a particular case*); *Schaetzle*, 343 F.3d at 443 (explaining that when the TCCA denies state habeas relief without a written opinion, the federal habeas court "assumes that the state court applied the proper 'clearly established Federal law'"); *see also Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (setting forth the "look through" doctrine); *Woodfox v. Cain*, 772 F.3d 358, 369 (5th Cir. 2014) (citing *Ylst* and explaining that, under the "look through" doctrine, "we ignore—and hence, look through—an

unexplained state court denial and evaluate the last reasoned state court decision") (citations and quotations omitted).   Petitioner adds nothing new to this claim at the federal level that would call into doubt the TCCA's decision to deny relief, and he fails to demonstrate that there was anything improper or incorrect about the factual findings by the state courts.

The second component of Petitioner's first claim concerns the warrant for the blood sample for DNA analysis.   Petitioner argues the warrant was not supported by probable cause, and, as a result, the trial court erred by admitting the results into evidence during the trial. Respondent argues correctly that this issue is procedurally barred from review because the issue was neither objected to nor preserved properly at the trial level under Texas's contemporaneous objection rule, which, in turn, precluded review on appeal.   Although Petitioner raised this issue on direct appeal, the Thirteenth Court of Appeals concluded that the "validity of the search warrant used to obtain appellant's blood sample was not challenged at the suppression hearing or at trial," and the appellate court refused to consider it.   *Pizano*, 2012 WL 1964553, at *11.   It is well-settled under Fifth Circuit precedent that the "Texas contemporaneous objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review of a petitioner's claims.'"   *E.g.*, *Jackson v. Johnson*, 194 F.3d 641, 652 (5th Cir. 1999). In other words, a failure to object properly under the Texas contemporaneous objection rule can result in procedural default in a § 2254 action.   Although the TCCA summarily denied Petitioner's state habeas petition, the decision by the Thirteenth Court of Appeals demonstrates that review of the merits of this claim was precluded on direct appeal because Petitioner did not object properly at the trial level under the contemporaneous objection rule, and the record reflects that the disposition of the claim on direct appeal ultimately precluded review of the

merits on collateral appeal. (*See* State Ct. Rec. 15-32 at 51; 88.) *See Richter*, 131 S. Ct. at 785 (indicating that the presumption that the state court reviewed the federal claims on the merits when it summarily denied relief may not apply in some situations, such as when "there may be reason to think some other explanation for the state court's decision is more likely") (citing *Ylst v. Nunnemaker*, 501 U.S. at 803, which established the practice of looking through a summary denial to the last reasoned decision by a state court); *Canales v. Stephens*, 765 F.3d 551, 566 (5th Cir. 2014) (reviewing the record and concluding there was no indication the TCCA had ever reached the merits of the state prisoner's claims, for the purposes of determining whether the state court relied on an independent and adequate state law procedural ground).   This constitutes an adequate and independent state procedural ground that bars federal review. *See Jackson*, 194 F.3d at 652 ("The Texas contemporaneous objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review of a petitioner's claims."); *Hogue v. Johnson*, 131 F.3d 466, 493 (5th Cir. 1997) (explaining that it was apparent that the state court never addressed the merits of the federal law claims due to a failure to preserve the issues under Texas's contemporaneous objection rule, which meant the claims were defaulted).

However, a court may consider the merits of the claim if the prisoner can overcome the procedural default by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).   The undersigned finds that Petitioner fails to establish either.   Notably, the TCCA denied relief for Petitioner's claim that counsel was ineffective for failing to challenge the search warrant for lack of probable cause. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (explaining that the

petitioner must show that counsel's performance was deficient and prejudice resulted from that deficiency).   The denial of this claim helps support the conclusion that (1) the merit of the underlying claim was not particularly strong (*i.e.*, there is no indication that counsel failed to raise a meritorious argument), and (2) there is an absence of cause and prejudice to excuse the default.   Nothing about the facts of this case supports the conclusion that Petitioner can overcome the default (or meet the actual innocence exception).   *E.g.*, *Coleman*, 501 U.S. at 753 (explaining that cause requires a showing that "there must be something external to the petitioner, something that cannot be fairly attributed to" the petitioner); *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (explaining that "cause" for a procedural default typically requires a demonstration that some objective factor external to the defense impeded the petitioner's efforts to comply with the state's procedural rule).   Also, as Respondent persuasively argues, the underlying claim lacks merit:

> The warrant in question was supported by facts in support of obtaining a sample of Pizano's blood. The application for the search warrant recounted that police recovered an apparently-new set of gloves near the crime scene and discovered that the same type of gloves had been purchased at the local Wal-mart.   Police then obtained surveillance video from the Wal-mart showing Pizano and his brother purchasing said gloves shortly before the murder.   When police confronted Pizano about the video, Pizano denied any recollection of purchasing the gloves. These facts constitute probable cause to support issuance of the warrant in question.

(Dkt. Entry No. 16 at 32.)

Finally, the undersigned finds that this Fourth Amendment claim is barred under *Stone v. Powell*, 428 U.S. 465, 494 (1976).   In *Powell*, the Supreme Court held that where the defendant has a full and fair opportunity to litigate Fourth Amendment claims in state court, he may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.   *Id.*   The United States Court of Appeals for the

Fifth Circuit has held that such a search and seizure claim cannot be reviewed after the petitioner has been provided an opportunity to challenge the search and seizure, regardless of whether he has taken advantage of it.   *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002).

Not surprisingly, Petitioner does not allege that he was not provided with an opportunity to litigate this claim in state court for any reason.   *See Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006) (quoting *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980), for the proposition that a petitioner must show that "the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits").   The record reflects that Petitioner simply did not pursue and preserve this claim via an objection in the trial court, which precluded review on direct appeal.   Accordingly, Petitioner may not litigate the validity of the warrant due to insufficient probable cause in this action because *Stone* precludes it.

In summary, Petitioner's first claim should be denied and dismissed.   Petitioner fails to show that the denial of relief under *Miranda* was contrary or unreasonable.   Also, the "invalid warrant" component of his claim is procedurally defaulted without excuse, lacks substantive merit, and is precluded under *Stone v. Powell*.

**Claim 2**

In his second claim, Petitioner argues that the evidence offered against him is legally and factually insufficient.   The undersigned finds that Petitioner is not entitled to relief for this claim.

Claims of "factual insufficiency" are rooted in Texas law, not the U.S. Constitution, so it does not rise to the level of a cognizable claim in a federal habeas action under § 2254.   *See, e.g., Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002) (explaining that factual sufficiency

claims in Texas case law are rooted in the Texas constitution, whereas federal habeas courts review sufficiency of the evidence claims under *Jackson v. Virginia*, 443 U.S. 307 (1979), which is a federal constitutional due-process standard).  Accordingly, Petitioner is not entitled to habeas review or relief to the extent he challenges the factual sufficiency of the evidence under Texas law.

As far as Petitioner's claim under *Jackson v. Virginia*, Petitioner is not entitled to federal habeas relief.  The record reflects that Petitioner raised this claim on direct appeal.  The Thirteenth Court of Appeals overruled this issue.  In doing so, the appellate court cited the proper standard under federal law (along with relevant state cases), explaining that, "[u]nder the *Jackson* standard, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Pizano*, 2012 WL 1964553, at *5 (quoting *Jackson*, 443 U.S. at 319).  The appellate court then proceeded to set forth the elements of the offense of capital murder during the commission of aggravated robbery and, relatedly, the elements of robbery and aggravated robbery, and the court explained in detail how Petitioner could be held criminally liable for the conduct of others under state law.  *Id.*, at *6–7.  The appellate court analyzed the evidence and concluded as follows:

> Here, appellant argues that his DNA evidence found on a glove at the crime scene is only a "modicum" of evidence that does not rationally support his conviction. We disagree.  The evidence established that: (1) on March 29, 2009, appellant and Alberto purchased a pair of Wells Lamont gloves like those found at the crime scene; (2) appellant's DNA was found on a Wells Lamont glove recovered at the crime scene; (3) the matching Wells Lamont glove was found in a nearby irrigation ditch, along with other items apparently used in the home invasion; (4) appellant's cell phone records show that he called DeArmas—who knew that Marin had a safe at his house—several hours before the home invasion; (5) appellant initially told the police he did not have a cell phone number and attempted to cancel his cell phone account the day after the home invasion; (6)

appellant's van—which he reported as stolen the morning after the home invasion and was recovered later—contained black zip ties and duct tape similar to those found at and near the crime scene; (7) when recovered, the van showed no signs that it had been broken into; and (8) when police attempted to interview DeArmas, he abruptly disappeared and has not been seen since. Viewing the evidence in the light most favorable to the verdict, *see Brooks*, 323 S.W.3d at 898–99, we hold there was legally sufficient evidence to find appellant guilty as a party under section 7.02(a)(2). See Tex. Penal Code Ann. § 7.02(a)(2). The jury could have found beyond a reasonable doubt that appellant's DNA on the glove and other evidence established that he and Alberto attempted to rob Marin and appellant either (1) shot Marin himself or (2) aided Alberto in shooting Marin. We overrule appellant's third and fourth issues.

*Pizano*, 2012 WL 1964553, at *7.

Respondent argues that the reasoning of the appellate court on direct review reflects why Petitioner is not entitled to relief. The undersigned agrees. Petitioner fails to show that the TCCA's decision to deny relief for this claim was objectively unreasonable under AEDPA in light of the foregoing direct and circumstantial evidence from which "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See, e.g., Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) ("[A] state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was 'objectively unreasonable.'").

Petitioner's second claim should be denied and dismissed because he is not entitled to federal habeas review of a factual-insufficiency claim under state law or relief for this claim, and he fails to show he is entitled to relief within the meaning of AEDPA based on insufficient evidence under the U.S. Constitution, as set forth in *Jackson v. Virginia.*

**Claim 3**

In Petitioner's third claim, he argues that defense counsel rendered ineffective assistance by (a) failing to contest the validity of the search warrant to seize Petitioner's blood; (b) failing to

investigate and produce witnesses crucial to his defense; (c) failing to properly impeach the prosecution's witnesses; and, (d) committing an accumulation of errors that collectively rendered his representation ineffective.

### Ineffective Assistance of Counsel and AEDPA

The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). When a prisoner proceeds under § 2254 on constitutional grounds of ineffective assistance of counsel, the prisoner must satisfy the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The prisoner must show that counsel's performance was deficient and that prejudice resulted from that deficiency. *Id.* at 687. To demonstrate deficient performance under the first prong, the prisoner must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687–88. A court's scrutiny of counsel's performance is "highly deferential," and every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Under the second *Strickland* prong, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* at 687.

Under AEDPA, the "more general the rule, the more leeway [state] courts have in reaching outcomes in case-by-case determinations." *Knowles v. Mirzayance*, 129 S. Ct. 1411,

1420 (2009) (citation omitted). The "*Strickland* standard is a general standard," so, under AEDPA, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* The Supreme Court describes a federal court's review under § 2254(d)(1) of a state court's denial of a *Strickland* claim as "doubly deferential judicial review." *Id.* "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S. Ct. at 786.

**Analysis**

As already discussed, the warrant was supported by the recovery of the gloves at and near the scene of the crime, the Wal-mart video of Petitioner and his brother buying similar gloves, and Petitioner's denial to police of any recollection of buying gloves. Had counsel moved to attack the search warrant for insufficient probable cause, it would have been, at a minimum, a very uncertain matter and, at worst, a losing motion, which undermine Petitioner's ability to demonstrate both deficient performance and prejudice under *Strickland*. In light of the record, it was entirely reasonable for the TCCA to deny relief on this basis. *See Strickland*, 466 U.S. at 691; 693 (explaining that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" and emphasizing that the petitioner must affirmatively demonstrate prejudice, which means that "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding"); *Knowles*, 129 S. Ct. at 1419 (explaining that the Supreme Court has never evaluated defense counsel's performance under a "nothing to lose" standard); *see also Richter*, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable,"

which is quite "different from asking whether defense counsel's performance fell below *Strickland*'s standard.").

For his second *Strickland* ground, Petitioner alleges that counsel was ineffective for failing to call a doctor and nurse to testify in his favor regarding the validity of the warrant, which would have been crucial to his defense.   He states there was a prior state proceeding that ended in a mistrial, and a nurse testified at that proceeding that Petitioner showed up for the blood draw in handcuffs.   (Dkt. Entry No. 2 at 12; 16.)

Based on the record, Petitioner cannot show that the denial of relief for this claim was unreasonable.   First, it is not at all evident whether these witnesses would have been available and willing to testify at trial.   (*See* Dkt. Entry No. 11 at 20–21.)   Second, even assuming a medical doctor (or nurse) would have testified that he refused, at least initially, to do a blood draw based on the warrant presented, the substantive value of such testimony in the proceeding and on the outcome is speculative at best because the validity of a warrant is a legal question, not a medical one.   Third, even if a nurse was willing to testify that Petitioner showed up in handcuffs at the hospital where the blood draw was to be conducted, that is not particularly dispositive of whether or not the warrant was supported by probable cause.   Considering the conclusory, speculative, and attenuated nature of this ground, it was entirely consistent with Supreme Court precedent for the state court to deny relief. *See Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (reiterating that, under *Strickland*, "[c]ounsel's competence . . . is presumed, and the [petitioner] must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy") (citations omitted); *Strickland*, 466 U.S. at 693 (stating that the defendant must affirmatively prove prejudice); *see also Coble v. Quarterman*, 496 F.3d 430, 436 (5th Cir. 2007)

("Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.") (citations omitted);   *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.").

For his third ground, Petitioner argues that counsel failed to properly impeach the prosecution's witnesses.   Somewhat more specifically, he alleges that "the two police officers (chief witnesses for the state) had made conflicting statements in a prior proceeding."   As with the prior ground, it was entirely reasonable for the TCCA to deny this claim under *Strickland* because, at a minimum, it is conclusory and fails to sufficiently demonstrate deficient performance and prejudice.   *See Kimmelman*, 477 U.S. at 381 (reiterating that, under *Strickland*, "[c]ounsel's competence . . . is presumed, and the [petitioner] must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy");   *Strickland*, 466 U.S. at 693 (stating that the defendant must affirmatively prove prejudice).   Moreover, as Respondent points out, the general testimony by the responding or investigative officers was, in all likelihood, less determinative of or critical to the outcome of this case than the DNA evidence and the Wal-mart video linking Petitioner to the gloves used by the perpetrators, which undermines Petitioner's ability to demonstrate prejudice.   *See Strickland,* 466 U.S. at 687 (explaining that a reasonable probability under the prejudice prong is "a probability sufficient to undermine confidence in the outcome");   *see also Richter*, 562 U.S. at 101 ("The pivotal question is whether the state court's

application of the *Strickland* standard was unreasonable," which is quite "different from asking whether defense counsel's performance fell below *Strickland*'s standard.").

For his final ground, Petitioner alleges that counsel committed an accumulation of errors that collectively rendered his representation ineffective.   It was entirely reasonable for the state court to deny relief on this ground because Petitioner's allegation of "cumulative error" is conclusory.   More importantly, there is nothing unreasonable about the state court denying relief because it concluded that Petitioner's other *Strickland* grounds did not entitle him to relief (*i.e.*, Petitioner could not show an accumulation of errors by counsel).   *Cf. United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006) ("Our clear precedent indicates that ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions.");   *Miller v. Johnson*, 200 F.3d 274, 286 n.6 (5th Cir. 2000) (stating that in the absence of specific demonstrated error, a defendant cannot, by definition, show that cumulative error of counsel deprived him of a fair trial).

In conclusion, Petitioner's third claim, which is comprised of several grounds of ineffective assistance of counsel, should be denied and dismissed.   Petitioner fails to meet AEDPA's stringent standards.

## V.   CONCLUSION

### *Recommended Disposition*

After careful review of the record and applicable law, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment (Dkt. Entry No. 16) be **GRANTED** for the reasons explained in this Report, Petitioner's claims under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED** with prejudice for the reasons explained in this Report, and the case be closed.

The undersigned also respectfully recommends that the District Court deny a Certificate of Appealability upon issuance of its final order in this section 2254 proceeding.   The undersigned finds that the record supports the conclusion that Petitioner fails to show:   (1) that reasonable jurists would find this Court's "assessment of the constitutional claims debatable or wrong" or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling."   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing 28 U.S.C. § 2253(c)).

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations.   A party may respond to another party's objections within 14 days after being served with a copy thereof.   The district judge to whom this case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made.   The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The clerk of this Court shall forward a copy of this document to the parties.

**DONE** at McAllen, Texas, this 26th day of April, 2016.

Dorina Ramos
UNITED STATES MAGISTRATE JUDGE